UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

SMIN PO,

       Petitioner,

       v.                                       CAUSE NO. 3:26cv682 DRL-SJF

BRIAN ENGLISH,

       Respondent.

## OPINION AND ORDER

Immigration detainee Smin Po filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241, alleging that he is unlawfully confined in violation of the laws or Constitution of the United States. The respondent answered the petition, and Mr. Po filed a reply. The petition is ready to be decided.

Mr. Po is a Burmese citizen who entered the United States on July 28, 2007. From 2010 to 2012, he was convicted of assault, driving under the influence, and unlawful use of a firearm. On April 23, 2013, an immigration judge ordered him removed to Burma. After ninety days of immigration detention, he was released on conditions of supervision due to his inability to be removed. On March 13, 2026, United States Immigration and Customs Enforcement (ICE) detained him again. On April 22, 2026, the government submitted a travel document application to the Burmese embassy. On May 12, 2026, the government notified Mr. Po that it would conduct a custody review on June 3, 2026, and invited him to submit documentation for consideration in support of his release. On June 3, 2026, the government notified him that it had reviewed his custody status and

determined that it would not release Mr. Po because the government expected his removal to be executed in the reasonably foreseeable future. The government scheduled an interview for Mr. Po with the Burmese consulate for July 22, 2026.

The respondent first argues that the court lacks subject matter jurisdiction over Mr. Po's habeas petition under 8 U.S.C. § 1252(g) and § 1252(b)(9). The court has thoroughly considered its jurisdiction to review post-removal-order immigration detention. For reasons given before, jurisdiction is secure insofar as this opinion goes. *See Liang v. English*, No. 3:25cv1052, 2026 WL 835853, 1 (N.D. Ind. Mar. 26, 2026) (Leichty, J.).

Turning to the merits, 8 U.S.C. § 1231(a)(6) gives the government the authority to detain a noncitizen while it effectuates a removal order. All noncitizens must be detained for a 90-day "removal period," which for Mr. Po ended 13 years ago. *See* 8 U.S.C. §§ 231(a)(1)(A), (a)(2)(A). Beyond this 90-day period, certain classes of noncitizens may be detained longer—what the statute calls inadmissible aliens (under 8 U.S.C. § 1182), those who have violated their nonimmigrant status conditions (under 8 U.S.C. § 1227(a)(1)(C)), those who have committed certain crimes, such as aggravated felonies, drug trafficking, or illegal firearm offenses (under 8 U.S.C. § 1227(a)(2)), those removable for national security or foreign relations reasons (under 8 U.S.C. § 1227(a)(4)), and those whom the Attorney General determines to be a risk to the community or unlikely to comply with the order of removal. These noncitizens "may be detained beyond the removal period" or released on conditions of supervision. 8 U.S.C. § 1231(a)(6). The Warden relies on this Section 1231(a)(6) as the basis for Mr. Po's current detention.

"The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law," and "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). To avoid a constitutional due process problem with § 1231(a)(6), and specific to a noncitizen who is present within this country and who is ordered removed, the law requires that his detention be limited to a reasonable time—namely "a period reasonably necessary to bring about that alien's removal from the United States." *Id.* at 689; *see also id.* at 682, 690-91.

Any § 1231(a)(6) detention of a present-but-ordered-removed noncitizen has this limitation, as it guards against the possibility that he might be indefinitely detained should his removal not be reasonably achievable. His indefinite detention would raise a serious constitutional problem. *Id.* at 690; *see also Clark v. Suarez Martinez*, 543 U.S. 371, 378 (2005) (same). In short, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Zadvydas*, 533 U.S. at 699.

The historic writ of habeas corpus grants a federal court the authority to review a noncitizen's detention and to decide independently whether "a set of particular circumstances amounts to detention within, or beyond, a period reasonably necessary to secure removal." *Id.*; *see also* 28 U.S.C. § 2241(c)(3). "In answering that basic question, the habeas court must ask whether detention exceeds a period reasonably necessary to secure removal" and "should measure reasonableness primarily in terms of the statute's basic

3

purpose, namely assuring the alien's presence at the moment of removal." *Zadvydas*, 533 U.S. at 699. When removal proves reasonably foreseeable, the court can consider other factors (such as risk of crime) and often will deny habeas relief; whereas, when removal seems attenuated or unlikely, the court will order the individual's release, albeit conditioned on appropriate terms of supervision and the noncitizen's compliance with these terms. *See id.* at 699-700. After all, the choice isn't between detention and a noncitizen "living at large," but between detention and a noncitizen's supervised release on conditions that he cannot violate. *Id.* at 696.

The law materially defers these difficult judgments to the Executive Branch for a six-month period during which detention is considered presumptively reasonable to execute a removal order. *Id.* at 700-01. Even thereafter, the court listens with care when the government's "foreign policy judgments"—such as the status of repatriation negotiations— are implicated and otherwise affords "appropriate leeway when its judgments rest upon foreign policy expertise." *Id.* at 700. A noncitizen "may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. But "once [he] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the government must respond with evidence sufficient to rebut that showing." *Id.* (cleaned up); *see also Suarez Martinez*, 543 U.S. at 385-86.

The petitioner bears the initial burden, and the court sees no reason today to alter this. *See* 28 U.S.C. § 2241; *Zadvydas*, 533 U.S. at 700; *see also Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011); *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009). Nor must the

court engage the same constitutional dilemma that § 1231(a)(6) could present merely because this is a second period of detention and not his first. *See Zadvydas*, 533 U.S. at 690. The court may consider not just what led to his original detention and release years ago, to the extent still pertinent, but also what circumstances newly exist today. Despite the old adage, past isn't always prologue in this context, and just because removal couldn't occur before doesn't mean it can't reasonably occur today under renewed efforts. At the same time, nothing in § 1231(a)(6) and nothing in *Zadvydas* suggests that the mere passage of time erases everything about the initial showing to make it all irrelevant. *See also Vu v. English*, No. 3:25cv999, 2026 WL 194171, 11-14 (N.D. Ind. Jan. 26, 2026) (Leichty, J.); *cf. Kem v. Noem*, No. 3:25cv997, 2026 WL 100566, 10-11 (N.D. Ind. Jan. 14, 2026) (Leichty, J.).[1] After all, as the period of confinement grows, what qualifies as a reasonably foreseeable future conversely must shrink. *Id.* at 701.

No matter whether the time in detention in 2013 were to be added to the current four-month detention, Mr. Po has not met his burden. The respondent identifies Burma as the only country under consideration for removal. Mr. Po largely relies on the length of his detention and unsuccessful efforts to remove him to Burma in 2013. But today is a new day, and during his current detention the government has made strides toward his removal. The government submitted travel documents and scheduled an interview for Mr. Po with Burma (occurring just a few days ago). The government is thus actively working to remove Mr. Po to Burma, and the fact that Burma has agreed to interview Mr.

---

[1] No one should read either *Vu* or *Kem* as indicating that an original showing always remains gospel or shifting the burden.

Po suggests that it is amenable to considering a travel document. Moreover, Burma has recently issued travel documents to immigration detainees. *See, e.g., Anwar Shah v. English*, 3:26cv613 (N.D. Ind. filed May 7, 2026); *Lian v. English*, 3:26cv522 (N.D. Ind. filed Apr. 17, 2026); *Pi v. English*, 3:26cv461 (N.D. Ind. Apr. 6, 2026). Given the government's removal efforts and Burma's recent willingness to issue travel documents to immigration detainees, the court finds that Mr. Po has not met his preliminary burden of showing good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future.

Mr. Po also argues that he is entitled to habeas relief because the government did not provide him with reasons for revoking his supervised release or an informal initial interview as required by 8 C.F.R. § 241.13(i)(2). "[F]ederal agencies are required to follow their own regulations." *Zelaya Diaz v. Rosen*, 986 F.3d 687, 690 (7th Cir. 2021) (citing *Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954)); *see also Samirah v. Holder*, 627 F.3d 652, 664 (7th Cir. 2010) ("[R]ules promulgated by a federal agency, which regulate the rights and interests of others, are controlling upon the agency.").

The federal regulations require the government to provide notice of the reasons for revoking supervised release "upon revocation" and require the government to provide an initial informal interview "promptly" after a noncitizen's return to immigration custody to afford him an opportunity to respond to the reasons for revocation. 8 C.F.R. § 241.13(i)(3). The regulations further require the government to provide periodic custody reviews if the noncitizen remains in custody following the initial informal interview, the first of which "will ordinarily be expected to occur within

6

approximately three months after release is revoked." *Id.*; 8 C.F.R. § 241.4(l)(3). "That custody review will include a final evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release." 8 C.F.R. § 241.4(l)(3).

The periodic custody reviews and initial procedures consisting of the notice of revocation and initial informal interview serve the substantially similar purpose of allowing detainees to contest the reasons for revocation and the justification for continued detention. Here, the government might not have allowed Mr. Po an opportunity to dispute the revocation of his supervised release or his detention promptly after revocation as contemplated by the regulations, but he was granted another opportunity to dispute them through a custody review. Given the custody review, the court cannot find that this regulatory violation warrants Mr. Po's release, and the lesser measure of requiring the government to now reiterate reasons for revocation and provide an initial informal interview would serve no useful purpose. Consequently, this claim is not a basis for habeas relief. Because no other claims remain, the court will deny the habeas petition.

For these reasons, the court DENIES the habeas petition (ECF 1) and DIRECTS the clerk to close this case.

SO ORDERED.

July 27, 2026                                  *s/ Damon R. Leichty*
                                               Judge, United States District Court